**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
*Tampa Division*
www.flmb.uscourts.gov

IN RE:                                                          Chapter 11

KHALIL E. ABDO,                                     Case No.: 8:18-bk-01699-CPM

      Debtor.                              /

**DISCLOSURE STATEMENT**

**ARTICLE I**
**(INTRODUCTION)**

    **COMES NOW**, KHALIL E. ABDO, the Debtor-in-Possession, (hereinafter referred to as "Debtor"), provides the following *Disclosure Statement* to all of his known creditors in order to more fully disclose that information deemed by Debtor to be material, important and necessary for the creditors to arrive at a reasonably informed decision in exercising their right to vote for acceptance of the Plan of Reorganization (hereinafter "the Plan") and is more particularly described herein. This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,

- How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),

- Who can vote on or object to the Plan,

- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,

- Why [the Proponent] believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and

- The effect of confirmation of the Plan.

    The Plan is currently on file with the Court. Creditors will be notified by the Clerk as to the hearing date on confirmation of the Plan and may attend such hearing. Be sure to read the Plan as well as this Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan

itself that will, if confirmed, establish your rights[1].

The United States Bankruptcy Code provides, as a general rule that in order for a Plan of Reorganization to be deemed accepted, each class of claims must accept the Plan.  A class of creditors whose rights are impaired and/or altered under the Plan are deemed to have accepted the Plan if two-thirds (2/3) in dollar amount and one-half (1/2) in number of those creditors in that class holding allowed claims vote for the Plan.  The classes of claims which are not impaired under the Plan are deemed to have accepted the Plan and need not vote.

In the event that the Plan is not accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the voting creditors of any impaired class, then Debtor, under Section 1129(d) of the Bankruptcy Code, may request the Court to confirm the Plan anyway.  The Court, in such a case, will confirm the Plan if all the requirements for confirmation set forth in the Bankruptcy Code, are accepted by one or more classes of creditors, are met and the Court finds the Plan to be "fair and equitable" to the non-accepting classes.  If the Plan is not accepted by all classes, the Debtor's estate may be liquidated under Chapter 7 of the Bankruptcy Code.  In that event, the Debtor's assets would be liquidated and distributed to creditors after all costs of administration and payment of priority claims as defined by the Bankruptcy Code is effectuated.

The cost of distributing the Plan and this Disclosure Statement, as well as the cost, if any, of soliciting acceptances will be paid by Debtor.  In addition, Debtor has retained the services of Buddy D. Ford, P.A., of Tampa, Florida, in the connection with the preparation of the Plan.  Payment of fees, however, is contingent on approval by the Bankruptcy Court after notice is given to all creditors and other interested parties.

## ARTICLE II
## (DEFINITIONS)

For the purposes of the Plan, unless defined elsewhere herein, the following terms shall have the respective meanings ascribed to them below:

**Administrative Expenses.**  Expenses entitled to payment pursuant to 11 U.S.C. Sections 507(a)(1), 503(b) and 330, which include fees and expenses to the attorneys and accountants for the Debtor and the Committee.

**Administrative Claims Bar Date**  Means the date established by the Bankruptcy Court by which Persons asserting claims against the Debtor that arose after the commencement of the case must file an application for the allowance and payment of such Administrative Claims.

---

[1]*Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

**Allowed**.  Means with respect to a Claim, any Claim, proof of which was timely and properly filed or, if no proof of Claim was filed, which has not been listed by the Debtor on its Schedules as contingent, unliquidated or disputed, in either case, as to which no objection to allowance has been interposed on or before the expiration of the time within which to object to such Claim as set forth herein or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder.

**Assets**  Means all assets of the Debtor, of any nature whatsoever, including, without limitation, the Personal Property, claims of right, interests in contracts, and every other form of property whether real or personal, tangible or intangible, and wherever located.

**Avoidance Action**  Means an action brought pursuant to Sections 544, 547, 548, 549, 550 or 553 of the Bankruptcy Code by or on behalf of the Debtor.

**Ballots**  Means the ballots accompanying the Disclosure Statement upon which Impaired Creditors shall have indicated their acceptance or rejection of the Plan, in accordance with the Plan and the Voting Instructions.

**Bankruptcy Code**.  Title 11 of the United States Code, as amended from time to time, as applicable to Chapter 11 cases.

**Bankruptcy Court.**  The United States Bankruptcy Court for the Middle District of Florida, Tampa Division, having jurisdiction over this Chapter 11 case, and to the extent of the reference of the Chapter 11 Case pursuant to 28 U.S.C. §157(a), the United States Bankruptcy Court, Middle District of Florida.

**Bankruptcy Rules**.  The Federal rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 cases, including the local rules the Bankruptcy Court for the Middle District of Florida.

**Bar Date.**  The last date for filing claims in this Chapter 11 case shall be fixed by the Bankruptcy Court.

**Business Day**.  Means any day other than a Saturday, Sunday or a day which in Tampa, Florida, is a legal holiday or any day designated in Bankruptcy Rule 9006(a) as a "legal holiday."

**Cash**.  Means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and other similar items.

**Causes of Action**.  Means the claims, rights of action, suits, or proceedings, including Avoidance Actions; whether in law or in equity, whether known or unknown that the Debtor and/or its Estate, including without limitation, the Committee, if any, may hold, have a right to assert,

and/or have asserted against any person or entity.

**Chapter 11 Petition.**  The Petition filed in this case on March 8, 2018.

**Claim**.  Shall have the meaning as defined in §101(5) of the Bankruptcy Code.

**Claim Holder** or **Claimant**.  A holder of any Claim.

**Claims Objection Deadline**.  Means for each Claim, the later of (a) ninety (90) days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claim.

**Class.**  Any group of substantially similar Claims or Equity Interests classified by the Debtor's Plan pursuant to 1123(a)(1) of the Bankruptcy Code.

**Code.**  The United States Bankruptcy Code(11 U.S.C. §101 et seq.).

**Collateral**.  Any property or interest in property of the Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or other applicable law.

**Committee**.  The Official Committee of Unsecured Creditors, if so appointed by the U.S. Trustee pursuant to §1102(a) of the Bankruptcy Code in the Chapter 11 Case, as it may be reconstituted from time to time.

**Confirmation.**  The entry of a final, non-appealable order by the Bankruptcy Court confirming the Plan at or after the hearing pursuant to 11 U.S.C. §1129.

**Confirmation Date**.  The date upon which the Bankruptcy Court enters an order confirming the Plan pursuant to §1129 of the Bankruptcy Code.

**Confirmation Hearing**.  Means the hearing to consider Confirmation of the Plan under §1129 of the Bankruptcy Code.

**Confirmation Order**.  Means the order of the Bankruptcy Court confirming the Plan pursuant to §1129 of the Bankruptcy Code.

**Consummation**.  Means the occurrence of the Effective Date.

**Contingent Claim**.  Means a Claim that has not accrued and which is dependent upon a future event which may never occur.

**Creditor.**  Any party or entity having an allowed claim against the Debtor, including but not

limited to, the following:

>Creditors with Administrative Expenses, Priority Creditors, Secured Creditors, and General Unsecured Creditors, as herein elsewhere defined.

**Debtor.** KHALIL E. ABDO. Filer of a petition for relief under the Bankruptcy Code. Whenever used, the singular "Debtor" or "Debtor(s)" shall include the plural "Debtors".

**Debtor-in-possession**. The Debtor in its capacity as debtor-in-possession pursuant to §1107 of the Bankruptcy Code.

**Deficiency Claim**. Means an Unsecured Claim resulting from the value of any Collateral securing an Allowed Secured Claim being less than the amount of the Secured Claim secured by such Collateral.

**Disallowed**. Shall mean, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtor which: (a) has been Disallowed, in whole or part, by a Final Order of the Bankruptcy Court; (b) has been withdrawn by agreement of the Debtor and the holder thereof, in whole or in part; (c) has been withdrawn, in whole or in part, by the holder thereof; (d) if listed in the Schedules as zero or as Disputed, contingent or unliquidated and in respect of which a proof of claim has not been timely filed or deemed timely filed pursuant to this Plan, the Bankruptcy Code or any Final Order of the Bankruptcy Court or other applicable bankruptcy law; (e) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the filed amount of any proof of claim or proof of interest; or (f) is evidenced by a proof of claim or a proof of interest which has been filed, or which has been deemed to be filed under applicable law or order of the Bankruptcy Court or which is required to be filed by order of the Bankruptcy Court but as to which such proof of claim or proof of interest was not timely or properly filed. In each case a Disallowed Claim or a Disallowed Interest is Disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

**Disclosure Statement**. Means the Disclosure Statement (and all exhibits and schedules annexed thereto or referenced therein) that has been conditionally approved pursuant to Section 1125 of Bankruptcy Code. The Disclosure Statement contains information about the Debtor and describes the Chapter 11 Plan. The Disclosure Statement may be amended, modified or supplemented.

**Disputed Claim**. Means a Claim as to which a proof of Claim has been filed or deemed filed and as to which an objection has been or may be timely filed by any party in interest entitled to do so, which objection, if timely filed, has not been withdrawn and has not been overruled or denied by a Final Order. Prior to the time that an objection has been or may be timely filed for the purposes of the Plan, a Claim shall be considered a Disputed Claim, (a) if the amount of the Claim specified in the filed proof of Claim exceeds the amount of the Claim scheduled by a Debtor as other than Disputed, contingent or unliquidated; (b) if the priority of the Claim specified in the filed proof of

Claim is of a more senior priority than the priority of the Claim scheduled by a Debtor; (c) if the Claim has been Scheduled as Disputed, contingent or unliquidated; or (d) if the Claim has not been Scheduled.

**Distribution**. Means any payment of cash or property that is available for disbursement to Allowed Claimants as called for under the Plan.

**Effective Date**. Thirty (30) days from when the Order entered by the Bankruptcy Court confirming the Plan becomes final and non-appealable.

**Entity**. Means an entity as defined in Section 101(15) of the Bankruptcy Code.

**Equity Interest**. (a) The interest of any holder of equity securities of any Debtor represented by any issued and outstanding shares of common, preferred or any other type of stock of the Debtor whether or not transferable and (b) any option, warrant or right, contractual or otherwise, to acquire or receive any such interest.

**Estate**. The Debtor's estate created pursuant to §541 of the Bankruptcy Code upon the commencement of the Chapter 11 case.

**Final Decree**. An order entered by the Bankruptcy Court closing the Chapter 11 Case after substantial consummation of the Plan.

**Final Order**. An order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in this case, which has not been reversed, vacated or stayed and as to which (i) the time to appeal, petition for *certiorari*, or other re-argument, or rehearing has expired and as to which no appeal, petition for *certiorari*, new trail, re-argument, or rehearing thereof has bene sought or (ii) such order or judgment of the Bankruptcy Court shall have been affirmed by the highest Court to which such order was appealed, or *certiorari* shall have been denied, or a new trail, re-argument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, re-argument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order to not be a Final Order.

**General Unsecured Creditor.** A Creditor having a claim against the Debtor, including but not limited to deficiency claims, damages for rejection and guaranty claims which claims are not secured by a lien against property of the estate of the Debtor.

**Governmental Unit**. Means any foreign, federal, state, municipal, or other local governmental unit, including without limitation those defined under Section 101(27) of the Bankruptcy Code.

**Holder**.  Means a Person or Entity holding an Interest or Claim.

**Impaired Claim.**  A claim is impaired if the Plan alters the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

**Insider**.  Means an insider of the Debtor, as defined in Section 101(31) of the Bankruptcy Code.

**Lien**.  A lien, security interest, mortgage, deed of trust, or other charge or encumbrance on or in any real or personal property to secure payment of a debt or performance of an obligation of the Debtor.

**Payment Date**.  Means the date upon which the payments under the Plan shall be made.

**Person**.  Means any individual, corporation, general partnership, limited partnership, limited liability company, association, joint stock company, joint venture, Estate, business trust, governmental unit, creditors committee or other Entity.

**Personal Property**.  Means those tangible and intangible Assets of the Debtor other than the Real Property.

**Plan.**  The Debtor's Plan, together with all exhibits annexed thereto or referenced therein, including any modifications, amendments, corrections or supplements thereto.

**Priority Creditor.**  A creditor having an allowed claim entitled to priority pursuant to §507(a)(1) - (7) and (9) of the Bankruptcy Code, other than a Priority Tax Claim, Administrative Expense Claim or Professional Fee Claim.

**Priority Tax Creditor**.  Means a Claim entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code, other than a Priority Claim, Administrative Expense Claim or Professional fee Claim.

**Proceeds**.  Any Cash obtained through the liquidation of any of the Assets.

**Professional**.  Any professional employed in the Chapter 11 Case pursuant to Sections 326, 327, 328, 330, 503(b)(2) or (4), 1103 or 1107(b) of the Bankruptcy Code.

**Professional Fees or Claim**.  Means those fees and expenses claimed by Professionals retained by the Debtor through a Bankruptcy Court order pursuant to Sections 330, 331 and/or 503 of the Bankruptcy Code, and unpaid as of the Confirmation Date, but not including any subrogation or contribution Claim arising from any payment of any fees and expenses to a Professional other than from property of the Estate.

**Professional Fee Reserve Account.** means a non-interest bearing account in an amount equal to the Professional Fee Reserve Amount funded and maintained by the Law Office of Buddy D. Ford, P.A., during the pendency of the Chapter 11 case, then the Reorganized Debtor on and after the Effective Date solely for the purpose of paying all Allowed administrative fees including any unpaid fees and expenses of Professional in the Chapter 11 case.

**Pro Rata Share**.  The proportion that the amount of any Claim bears to the aggregate amount of such Claim and all other Claims in the same Class entitled to distributions from the same source of Cash, including disputed Claims.

**Reclamation Claim**.  Any right to payment from the Debtor, by any person or entity arising out of the sale of good to a Debtor in the ordinary course of such person's business, provided that such person has otherwise satisfied the requirements of §546(c) of the Bankruptcy Code, the Uniform Commercial Code, or other non-bankruptcy statutory requirements, as applicable, and any order of the Bankruptcy Court regarding such Claims.

**Retained Assets**.  Means those Assets of the Debtor that (a) were not scheduled by the Debtor as exempt under Section 522(b)(3); or (b) those Assets scheduled as exempt by the Debtor and with respect to such Assets a timely objection to exemptions was filed and sustained by Final Order of the Bankruptcy Court; and (c) are not Trust Assets.

**Schedules**.  The schedules of assets and liabilities and the statement of financial affairs, filed by the Debtor as required by §521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any supplements or amendments thereto through the Confirmation Date.

**Secured Creditor.**  Any creditor whose claim has been allowed by the Bankruptcy Court as having a lien against property of the estate of the Debtor to the extent of the value of the collateral as determined by the Bankruptcy Court.

**Statement of Financial Affairs.**  The Statement of Affairs and Schedules of Assets and Liabilities filed with the Bankruptcy Court by the Debtor and any amendments thereto.

**Subordinated Claim**.  Shall mean any Claim: (a) payment of which is subordinated in right of treatment or payment to other Claims under an agreement enforceable under applicable non-bankruptcy law, but only to the extent provided in such agreement; (b) for reimbursement or contribution of a Person that is liable with the Debtor on another Creditor's Allowed Claim unless and until such Claim is paid in full; or (c) subordinated in right of treatment or payment pursuant to Sections 509(c) or 510 of the Bankruptcy Code.

**Unsecured Claim.**  Any allowed claim against the Debtor made by a Creditor who has not been designated as a Creditor with Administrative Expenses, Priority Creditor, Secured Creditor and including but not limited to the deficiency portion of an under-secured claim, claims for rejection damages and guaranty claims.

## ARTICLE III
## (PURPOSE OF THIS DISCLOSURE STATEMENT)

The purpose of this Disclosure Statement is to provide the Holders of Claims and Equity Interests with adequate information to make an informed judgment about the Plan.

This information includes, among other things, (a) a summary of the Plan and an explanation of how the Plan will function, including the means of implementing and funding the Plan, (b) general information about the histories and businesses of the Debtor prior to the Petition Date and the events leading to the filing of the Reorganization Cases, and (c) a brief summary of significant events which have occurred to date in the Reorganization Cases.

This Disclosure Statement contains important information about the Plan and considerations pertinent to a vote for or against the Confirmation of the Plan. All Holders of Claims and Equity Interests are encouraged to review carefully this Disclosure Statement. Unless otherwise defined herein, all capitalized terms used in this Disclosure Statement have the meanings ascribed to them in the Plan. Any term used in the Plan or herein that is not defined in the Plan or herein and that is used in the Bankruptcy Code, the Bankruptcy Rules or the Local Rules of the Bankruptcy Court has the meaning assigned to that term in the Bankruptcy Code, the Bankruptcy Rules or the Local Rules, as the case may be. IF THERE IS ANY CONFLICT BETWEEN THE DEFINITIONS CONTAINED IN THIS DISCLOSURE STATEMENT AND THE DEFINITIONS CONTAINED IN THE PLAN, THE DEFINITIONS CONTAINED IN THE PLAN SHALL CONTROL.

## ARTICLE IV
## (VOTING INSTRUCTIONS)

### Who May Vote

Only the Holders of Claims and Equity Interests which are deemed "Allowed" under the Bankruptcy Code and which are "Impaired" under the terms and provisions of the Plan are permitted to vote to accept or reject the Plan. For purposes of the Plan, only the Holders of Allowed Claims in the Voting Classes are impaired under the Plan and thus may vote to accept or reject the Plan. ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN WILL BE PROVIDED ONLY TO MEMBERS OF THE VOTING CLASSES.

### How to Vote

Upon entry of an Order Conditionally Approving this Disclosure Statement, the Debtor will transmit a package to all voting parties that include this Disclosure Statement, the Plan of Reorganization, and a Ballot form (the "Ballot Package"). Once the Ballot Package is received each Holder of a Claim in a Voting Class should read the Disclosure Statement, together with the Plan of Reorganization and other exhibits thereto, in their entirety. After carefully reviewing the Plan and this Disclosure Statement and its other exhibits, to vote you will complete the enclosed Ballot, including

your vote with respect to the Plan, and return it as provided therein. If you have an Impaired Claim in more than one Class, you should receive a separate Ballot for each such Claim. If you receive more than one Ballot you should assume that each Ballot is for a separate Impaired Claim and should complete and return all of them.

If you are a member of a Voting Class and do not receive a Ballot, if your Ballot is damaged or lost, or if you have any questions concerning voting procedures, please call the law office of Buddy D. Ford, P.A., at (813)877-4669.

YOU SHOULD COMPLETE AND SIGN EACH BALLOT AND RETURN IT TO THE ADDRESS PROVIDED THEREIN IN ORDER TO BE COUNTED, BALLOTS MUST BE DULY COMPLETED AND EXECUTED AND RECEIVED BY THE CLERK OF THE BANKRUPTCY COURT.

### Acceptance of Plan and Vote Required for Class Acceptance

As the Holder of an Allowed Claim in the Voting Classes, your vote on the Plan is extremely important. In order for the Plan to be accepted and thereafter confirmed by the Bankruptcy Court without resorting to the "cram-down" provisions of the Bankruptcy Code as to other Classes of Allowed Claims, votes representing at least two-thirds in dollar amount and more than one-half in number of Allowed Claims of each Impaired Class of Claims that are voted, must be cast for the acceptance of the Plan. The Debtor is soliciting acceptances only from Holders of Claims in Classes entitled to vote on the Plan. You may be contacted by the Debtor or their agents with regard to your vote on the Plan.

### Confirmation Without Acceptance by All Impaired Classes

To meet the requirement for confirmation of the Plan under the "cram-down" provisions of the Bankruptcy Code with respect to any Impaired Class of Claims or Equity Interests which votes to reject, or is deemed to vote to reject, the Plan (a "Rejecting Class"), the Debtor would have to show that all Classes junior to the Class rejecting the Plan will not receive or retain any property under the Plan unless all Holders of Claims or Equity Interests in the Rejecting Class receive or retain under the Plan property having a value equal to the full amount of their Allowed Claims or Allowed Equity Interests.

### Confirmation Hearing, Disclosure Statement Hearing and Objections to Confirmation and Disclosure Statement

The Bankruptcy Court will schedule a hearing to consider final approval of the Disclosure Statement and Confirmation of the Plan. Any objection to Confirmation of the Plan must be filed and served in accordance with the Disclosure Statement Approval Order. Pursuant to the Disclosure Statement Approval Order, any such objection must be filed with the Bankruptcy Court and served on the Debtor, the Debtor's bankruptcy counsel, and the United States Trustee.

## ARTICLE V
### (HISTORY OF DEBTORS-IN-POSSESSION)

The Debtor is an individual who resides at 18520 Rustic Woods Trail, Odessa, Florida 33556. Debtor is a self-employed investor. The Debtor owns several different investment properties and business from which he derives his income.

### FACTORS PRECIPITATING CHAPTER 11 FILING

The Debtor filed for bankruptcy because of the foreclosure action against Debtor's homestead at 18520 Rustic Woods Trail by Encore Fund, LP as well as a separate foreclosure action by HSBC Bank USA, N.A. as Trustee for Wells Fargo on investment property located at 12507 Foxtrot Road. The Debtor has secured debt in excess of the Chapter 13 jurisdictional limit. The Debtor intends to analyze the profitability of current real estate investments and restructure the secured debt on properties that are able to generate cash flow.

### POST PETITION EVENTS

Since the filing of the bankruptcy petition numerous Court proceedings have occurred all of which are of public record with the Bankruptcy Court Clerk's office, Middle District of Florida, Tampa Division, address: *Sam H. Gibbons, United States Courthouse, 801 N. Florida Avenue, Tampa, Florida 33602*. The Debtor is continuing to manage his financial affairs as a Debtor-in-Possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code and has filed a Chapter 11 Case Management Summary, pursuant to Local Rule 2081-1(b). Debtor has fully complied with all the Court's orders and the United States Trustee's Guidelines.

### Significant Events During the Bankruptcy Case

Since the filing of the bankruptcy, the Debtor has successfully mediated his dispute with Encore Fund, LP resulting in an outcome which will allow him to maintain his homestead. The Debtor has also sold real estate located at 1327 Ranchwood Drive E., Dunedin, Florida.

### Tax Consequences of Plan

CREDITORS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.

The following discussion is a summary of certain U.S. federal income tax consequences of the consummation of the Plan to Holders of Claims and the Debtor. This summary is based on the Internal Revenue code (IRC), the U.S. Treasury Regulations promulgated hereunder, judicial authorities, published administrative positions of the Internal Revenue Service (IRS) and other applicable authorities, all as in effect on the date of this Disclosure Statement and all of which are subject to

change or differing interpretations, possibly with retroactive effect. No rulings of determinations of the IRS or any other taxing authorities have been sought or obtained with respect to the tax consequences discussed herein, and the discussion below is not binding upon the IRS or the courts. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position than any position discussed herein.

This discussion does not apply to Holders of Claims that are not "U.S. Persons" (as such phrase is defined in the IRC) and does not purport to address all aspects of U.S. federal income taxation that may be relevant to the Debtor or to such Holders in light of their individual circumstances. This discussion does not address tax issues with respect to such Holders subject to special treatment under the U.S. federal income tax laws (including, for example, banks, governmental authorities or agencies, pass-through entities, dealers and traders in securities, insurance companies, financial institutions, tax-exempt organizations, small business investment companies and regulated investment companies). No aspect of state, local, estate, gift, or non-U.S. taxation is addressed.

ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF AN ALLOWED CLAIM. ALL HOLDERS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS AS TO THE U.S. FEDERAL, STATE, LOCAL AND NON-UNITED STATES TAX CONSEQUENCES OF THE PLAN.

IRS CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS, ANY TAX ADVICE CONTAINED IN THIS SUMMARY (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING TAX-RELATED PENALTIES UNDER THE IRC. TAX ADVICE CONTAINED IN THIS SUMMARY (INCLUDING ANY ATTACHMENTS) IS NOT WRITTEN TO SUPPORT THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED BY THE SUMMARY. EACH TAXPAYER SHOULD SEEK ADVICE BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

1. **Consequences to Holders of Claims**

   a) Consequences to Holders of Secured Claims

   The following discussion assumes that each Holder of an Allowed Secured Claim holds such claim as a "capital asset" within the meaning of Section 1221 of the IRC. Pursuant to the Plan, each Allowed Secured Claim, at the election of the Debtor, may (i) remain secured by a Lien in property of the Debtor retained by such Holder, (ii) paid in full in cash (including allowable interest) over time or through a refinancing or a sale of the respective Asset securing such Allowed Secured Claim,

(iii) offset against, and to the extent of, the Debtor's claims against the Holder, or (iv) otherwise rendered unimpaired as provided under the Bankruptcy Code. If an Allowed Secured Claim remains secured by a Lien in the Debtor's Assets, the Holder of such Claim should not recognize gain or loss except to the extent collateral securing such Claim is changed, and the change in collateral constitutes a "significant modification" of the Allowed Secured Claim within the meaning of Treasury Regulations promulgated under Section 1001 of the IRC.

If an Allowed Secured Claim is paid in full in Cash, the Holder should recognize capital gain or loss (which capital gain or loss would be long-term capital gain or loss to the extent that the Holder has held the debt instrument underlying its claim for more than one year) in an amount equal to the amount of Cash received over the Holder's adjusted basis in the debt instrument(s) underlying its Allowed Secured Claim. To the extent that a portion of the Cash received represents accrued but unpaid interest that the Holder has not already taken into income, the Holder may recognize ordinary interest income.

b) Consequences to Holders of Priority Claims

To the extent that the Holder of an Allowed Priority Claim receives a Distribution under the Plan, such Holder should recognize such Distribution as ordinary income and submit the appropriate withholdings based on that Holder's particular circumstances. The Disbursing Agent shall make any appropriate withholdings from such Distributions.

c) Consequences to Holders of Unsecured Claims

Pursuant to the Plan, each Holder of an Allowed Unsecured Claim shall receive, on account of such Allowed Claim, a Pro Rata Distribution of Cash from the Plan Trust. To the extent the Holder of an Allowed General Unsecured Claim receives less than full payment on account of such Claim, the Holder of such Claim may be entitled to assert a bad debt deduction or worthless security deduction with respect to such Allowed Unsecured Claim.

To the extent that any amount received by a Holder of an Allowed Unsecured Claim under the Plan is attributable to accrued but unpaid interest and such amount has not previously been included in the Holder's gross income, such amount should be taxable to the Holder as ordinary interest income. Conversely, a Holder of an Allowed Unsecured Claim may be able to recognize a deductible loss (or, possibly, a write-off against a reserve for worthless debts) to the extent that any accrued interest on the debt instruments constituting such Claim was previously included in the Holder's gross income but was not paid in full by the Debtors. Such loss may be ordinary, but the tax law is unclear on this point.

### 2. Certain U.S. Federal Income Tax Consequences Of The Plan To The Debtor

As noted above, because the Debtor is a "pass through" entity, the Plan will have relatively few direct Federal Income Tax consequences to the Debtor. Instead, these tax consequences must be analyzed at the Holder's level, as discussed above.

### 3. Backup Withholding And Reporting

The Debtor and Disbursing Agent will withhold all amounts required by law to be withheld from payments subject to federal taxes, if any. Those entities will comply with all applicable reporting requirements of the IRC, as required.

THE FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION. ALL HOLDERS OF CLAIMS SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL OR FOREIGN TAX LAWS, AND OF ANY CHANGE IN APPLICABLE TAX LAWS.

## ARTICLE VI
## (LIQUIDATION ANALYSIS OF THE ASSETS OF DEBTOR)

An itemized analysis of the Debtor's assets are attached hereto as **Exhibit "A"** to this Disclosure Statement.

## ARTICLE VII
## (FUNDING OF THE PLAN)

The Debtor's Plan will be funded by the current and future income earned by the Debtor by his various business ventures. The Debtor proposes a reasonable Plan which is proposed in good faith and not by any means forbidden by law. Attached hereto as **Exhibit "B"** and incorporated herein by reference are actual Historical Financial Data and Proforma evidencing feasibility of the Debtor's Plan.

## ARTICLE VIII
## (BENEFITS OF A PLAN OF REORGANIZATION OVER LIQUIDATION)

The Plan is based upon the Debtor's belief that liquidation of the assets, would yield only minimal distribution, at best, to general unsecured creditors. Additionally, the priority and secured creditors would receive less than the contractual or legal obligations. The present management and ownership of the corporation will be retained post-confirmation. Steps will be taken to reduce overhead and expenses in order to effectuate repayment of the creditors in accordance with the Plan.

## ARTICLE IX
## (DISCHARGE, RELEASE, LIMITATION OF LIABILITY,
## AND GENERAL INJUNCTION)

**7.1 Discharge of Claims**

The Confirmation Order will not operate as a discharge, pursuant to Section 1141(d) of the Bankruptcy Code. The Court will issue a Discharge to the Debtors upon completion of all payments under this plan, to the fullest extent permitted by applicable law, as of the Effective Date, of any and all debts of, Claims of any nature whatsoever against the Debtors that arose at any time prior to the Effective Date, including any and all Claims for principal and interest, whether accrued before, on, or after the Petition Date. Without limiting the generality of the foregoing, when the Court enters the Discharge on behalf of the Debtors, the Debtors and the Debtors' successors or assigns, will be discharged from any debt that arose prior to the Effective Date and from any and all debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such debt was filed pursuant to Section 501 of the Bankruptcy Code, (b) a Claim based on such debt is an Allowed Claim pursuant to Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan.

As of the Discharge, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of a Claim, will be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtor or any of the Debtor's successors and assigns, or the Assets or Property, any other or further Claims, debts, rights, Causes of Action, remedies, or Liabilities based upon any act, omission, document, instrument, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan. Until that date, the automatic stay remains in full force and effect.

In accordance with the foregoing, except as specifically provided in the Plan or the Confirmation Order, the Confirmation Order will be a judicial determination of the discharge of all such Claims and other debts and Liabilities against the Debtor, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtor, at any time, to the extent that such judgment relates to a discharged Claim, Liability, or debt.

**7.2 Post-Petition Disclosures and Solicitation**

To the extent provided under 11 U.S.C. §§ 1123(b)(3)(A) and 1125(e), and applicable law, the Debtor and the Debtor's employees, members, agents, representatives, Professionals (acting in such capacity), and their respective successors and assigns, will neither have nor incur any Liability whatsoever to any Person or other Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, implementation, Confirmation, or Consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be

taken, in connection with the Plan or the bankruptcy case. The rights granted under this Article are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtor and the Debtor's agents have or obtain pursuant to any provision of the Bankruptcy Code. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Consistent with 11 U.S.C. §1144, the Bankruptcy Court shall retain sole and exclusive jurisdiction for a period of 180 days following the entry of the Confirmation Order to consider modification of this exculpation provision in the event that any Holder of an Allowed Claim asserts that the Confirmation Order was procured by fraud.

### 7.3 Barton Doctrine

The "Barton Doctrine," *e.g. Barton v. Barbour,* 104 U.S. 126, 26 L.Ed. 672 (1881) (Supreme Court held that a trustee cannot be sued without leave of the bankruptcy court), which prohibits a party from suing either a trustee, the officers of a Debtor-in-Possession, or its attorneys, in a non-appointing court for acts done in their official capacity, shall pertain to the provisions of this Article, and shall stand as one of the bases for enforcement of the provisions herein. *See, e.g., In the Matter of Linton,* 136 F.3d 544, 545 (7th Cir. 1998); *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240-41 (6th Cir. 1993) ("[i]t is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a non-appointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court ... counsel for trustee, court appointed officers who represent the Estate, are the functional equivalent of a trustee"); *Mangun v. Bartlett (In re Balboa Improvements,* Ltd.), 99 B.R. 966, 970 (9th Cir. BAP 1989) (holding that permission to sue Debtor's attorney for alleged misconduct in the administration of an estate must be obtained from the bankruptcy court); Matter of *Krikava*, 217 **B.R.** 275, 279 (Bankr. D. Neb. 1998) ("[c]onsent of the appointing bankruptcy court is required even when the plaintiff seeks to sue in another federal court").

### 7.4 General Injunction

Pursuant to Sections 105, 1123, 1129, and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Confirmation Date, except as otherwise provided in the Plan or in the Confirmation Order, all Persons or other entities that have held, currently hold, or may hold a Claim or other debt that is discharged pursuant to the terms of the Plan are and will be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged Claims, debts, or Liabilities, other than actions brought to enforce any rights or obligations under the Plan:

i. commencing or continuing in any manner any action or other proceeding against the Debtor or the Debtor's Property;

ii. enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtor or the Debtor's Property;

    iii.    creating, perfecting, or enforcing any Lien or encumbrance against the Estate, the Debtor or the Debtor's Property;

    iv.    asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor or the Debtor's Property;

    v.    without limiting the foregoing, commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; and

    vi.    commencing or continuing, in any manner or in any place outside the Bankruptcy Court, any action, suit, proceeding, Claim, or Cause of Action against the Debtor in Possession or Professional for acts done in the course of such Person's duties and official capacity during the course of the bankruptcy case, in contemplation thereof, or otherwise, including but not limited to the consolidation, preservation and liquidation of the Estate and such tasks necessarily incident thereto.

**7.5  No Liability for Tax Claims**

Unless a taxing Governmental Authority has asserted a Claim against the Debtor by properly filing a Proof of Claim before the Bar Date established therefore, no Claim of such Governmental Authority will be Allowed against the Debtor for taxes, penalties, interest, additions to tax, or other charges arising out of the failure, if any, of the Debtor or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

## ARTICLE X
## (SUMMARY OF DEBTOR'S PLAN OF REORGANIZATION)

The Debtor's Plan has been proposed in good faith and not by any means forbidden by law. It is based upon the Debtor's belief that a forced liquidation of the Debtor's property will result in a substantially smaller recovery to priority and secured creditors with little or no return to unsecured creditors.

The Debtor's proposed Plan provides for the continued management of the Debtor's financial affairs.  A copy of the proposed Plan is attached hereto as **Exhibit "C"** and incorporated herein by reference.

## ARTICLE XI
## (OBJECTION TO CLAIMS)

Unless otherwise ordered by the Bankruptcy Court, after notice and a hearing, the Debtor shall

have the right to review all claims made by creditors of the estate and to make and file objections to claims as it deems necessary and shall serve a copy of each objection upon the holder of the disputed claim or interest to which the objection is made.

## ARTICLE XII
### (REQUEST TO ADMINISTRATIVELY CLOSE INDIVIDUAL CASE)

The Debtor respectfully requests that upon filing proof the confirmed Plan of Reorganization is substantially consummated under Bankruptcy Code Section 1101(2), the Court enter an Order Administratively Closing the Case under the following terms and conditions:

a. Confirmation of an individual Debtor's Plan does not discharge any debt provided for in the Plan until the Court grants a discharge on completion of all payments under the Plan, or as otherwise provided in Section 1141(d)(5) of the Bankruptcy Code. The Debtor will not be discharged from any debt excepted from discharge under Section 523 of the Code, except provided in Fed. R. Bankr. P. 4007(c).

b. After this Chapter 11 case is fully administered, the Debtor will seek entry of an Order under Fed. R. Bankr. P. 3022 administratively closing the chapter 11 case without entry of a discharge. Upon completion of all payments under the Plan or as otherwise available to the Debtor under Section 1141(d)(5)(B) of the Code, and certification of completion of an instructional course concerning personal financial management, the Debtor intends to file a Motion to Reopen the Case for the limited purpose of obtaining a Discharge.

**DATED** on this 28th day of June, 2018.

/s/ Khalil E. Abdo
Khalil E. Abdo

**RESPECTFULLY SUBMITTED** on this 2nd day of July 2018.

BUDDY D. FORD, P.A.,

/s/ Jonathan A. Semach
Jonathan A. Semach, Esquire (FBN: 0060071)
Email: *Jonathan@tampaesq.com*
9301 West Hillsborough Avenue
Tampa, Florida 33615-3008
Telephone #: (813) 877-4669
Facsimile #: (813) 877-5543
Attorney for Debtor

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 2nd day of July, 2018, a true and correct copy of the foregoing has been furnished by ⊙ CM/ECF Electronic Mail to:

    Rachel L Ahlum on behalf of Creditor HSBC Bank USA, National Association
        ecfflmb@aldridgepite.com, RAhlum@ecf.courtdrive.com
    Wanda D Murray on behalf of Creditor HSBC Bank USA, National Association and Creditor
        Wells Fargo Bank, N.A.   ecfflmb@aldridgepite.com, WMurray@ecf.courtdrive.com
    Ezra Z Scrivanich on behalf of Creditor ENCORE FUND TRUST 2013-1
        Ezra@SHLegalGroup.com
    United States Trustee - TPA USTPRegion21.TP.ECF@USDOJ.GOV
    Nathan A Wheatley on behalf of U.S. Trustee United States Trustee - TPA
        nathan.a.wheatley@usdoj.gov

and, by ⊙ Regular U.S. Mail to:

    Internal Revenue Service, Post Office Box 7346, Philadelphia, PA 19101-7346
    State of Florida, Department of Revenue, PO Box 6668, Tallahassee, FL 31314-6668
    Khalil E. Abdo, 18520 Rustic Woods Trail, Odessa, FL 33556
    Twenty (20) Largest Unsecured Creditors.

                                      /s/ Jonathan A. Semach
                                      Jonathan A. Semach, Esquire (FBN: 0060071)
                                      Email: *Jonathan@tampaesq.com*